560 So.2d 684 (1990)
Michael J. GREEN, Plaintiff-Appellant,
United States Fidelity & Guaranty Company, Intervenor-Appellant,
v.
INDUSTRIAL HELICOPTERS, INC. & Doug Wright, Defendants-Appellees.
No. 88-1365.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
Rehearing Denied May 22, 1990.
*685 Shelton & Legendre, Karl W. Bengtson, Lafayette, for plaintiff-appellant.
Gachassin, Hunter, Nicholas Gachassin, Lelia A. Collier, Lafayette, for intervenor-appellant.
Sonnier & Hebert, Charles R. Sonnier, Abbeville, for defendants-appellees.
Before FORET, STOKER and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Michael J. Green, brought this action for injuries he sustained when a helicopter he was riding in crashed landed in the Gulf of Mexico. Made defendants herein are Industrial Helicopters, Inc. (Industrial Helicopters), the owner of the helicopter, and Doug Wright, the pilot. United States Fidelity & Guaranty Company (USF & G), the worker's compensation carrier of the plaintiff's employer, intervened in the suit, seeking reimbursement for all compensation benefits and medical payments it has paid to the plaintiff. After a trial on the merits, the trial judge found in favor of the plaintiff and against the defendant. The Judgment also recognized USF & G's intervention; however, the intervenor's recovery was limited to the plaintiff's award for economic loss and medical expenses. Plaintiff and intervenor now appeal. Defendants filed an answer to appeal, requesting that this court reverse the Judgment in all respects. We amend the decision of the trial judge to increase the economic damage award to the plaintiff and also to increase the amount the intervenor is entitled to recover on its intervention. Additionally, the Judgment is amended to allow for legal interest on the intervenor's recovery. The trial judge's decision is affirmed as amended. Finally, we remand this case to the trial court for a contradictory hearing on the defendant's Motion for Deposit of Money Into the Registry of Court and Cancellation of Judgment.

FACTS
Plaintiff was employed by Southern Petroleum Laboratories as a fluid meter technician. This position involved the installing, maintaining and repairing of fluid metering devices on offshore production platforms. Southern Petroleum Laboratories had contracted with Industrial Helicopters to transport its workers out to the platforms.
On November 26, 1984, a helicopter owned by Industrial Helicopters and operated by Doug Wright picked up the plaintiff in Milton, Louisiana and proceeded out towards the plaintiff's work site in the High Island section of the Gulf of Mexico, off the Texas coast. En route to the area, the helicopter stopped for refueling at Exxon's West Cameron 616 platform. The refueling process was completed and the helicopter took off from the platform. Shortly after lifting off, the helicopter experienced mechanical trouble and was forced to make an emergency landing in the Gulf.
Not long after the helicopter landed in the Gulf, a rescue capsule was launched from the Exxon platform. Upon reaching the helicopter, Exxon personnel assisted the pilot and the plaintiff into the rescue craft. Both men were transported to the Exxon platform, and then, eventually, to land.
The plaintiff claims that he suffered injuries to his ribs, chest, neck, shoulder and jaw as a consequence of the collision. For the three and one-half years between the *686 date of the accident and the date of the trial of this matter, the plaintiff was under medical care from a variety of doctors and dentists. The evidence also indicates that one month after the accident, the plaintiff returned to light duty work with Southern Petroleum Laboratories. He was employed by Southern Petroleum Laboratories for approximately five months at the light duty position, when in May of 1985, he was laid off. The apparent reason for this lay off was that his employer ran out of light duty work for him to perform. After the plaintiff was terminated by his employer, he applied for and received disability benefits pursuant to the Longshore and Harbor Workers' Compensation Act. The plaintiff later enrolled in an electronics course at the Lafayette Regional Trade School. Upon completion of his training in August of 1987, he obtained full-time employment with MASCO, Inc. as an electronic solid state component technician.
Plaintiff, intervenor and defendant, Industrial Helicopters, have appealed the decision of the trial court, each raising several specifications of error.

LIABILITY OF PILOT DOUG WRIGHT
In his Reasons for Judgment, the trial judge stated, "[i]n the Court's opinion, Mr. Wright's handling of this emergency situation was extraordinary. Accordingly, the Court finds that pilot error was not a factor in this crash." We agree, and find no liability on the part of Mr. Wright.

STRICT LIABILITY OF INDUSTRIAL HELICOPTERS
The trial judge found the defendant, Industrial Helicopters, to be strictly liable for the damage sustained by the plaintiff under Louisiana Civil Code Article 2317. Industrial Helicopters argues that this decision is manifestly erroneous.
Louisiana Civil Code Article 2317 provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
In Shipp v. City of Alexandria, 395 So.2d 727, 728-729 (La.1981), the Louisiana Supreme Court stated the following regarding the applicability of art. 2317:
"We have described the legal foundation for imposing liability under art. 2317 in the following terms:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
Jones v. City of Baton Rouge, 388 So.2d 737, 739 (La.1980), citing Loescher v. Parr, [324 So.2d 441, 446 (La.1975) ]. An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Jones v. City of Baton Rouge, supra; Loescher v. Parr, supra."
Industrial Helicopters contends that the plaintiff failed to prove the requisite elements of an art. 2317 action. We disagree.
It is undisputed that Industrial Helicopters owned the helicopter in which the plaintiff was a passenger on the crash. Thus, it is clear that the helicopter was in the care and custody of Industrial Helicopters.
*687 We also find that the plaintiff proved that there was a defect in the helicopter, which created an unreasonable risk of harm to the occupants. Both the pilot and a mechanic employed by the defendant, Craig Issac, testified at trial that the crash was caused by a malfunction of the helicopter's governor. This testimony was uncontroverted at trial. The evidence indicates to this court that the failure of the aircraft's governor caused it to lose altitude and eventually crash in the Gulf.
Finally, we determine that the plaintiff proved by a preponderance of the evidence that his injuries were caused by the defect in the helicopter. The plaintiff stated at trial that the jolt of the helicopter's impact with the water caused a strain on his neck and shoulder. He also stated that during the rescue operation he banged his jaw on the outer surface of the rescue vessel. Dr. Thomas C. Laborde, a specialist in physical medicine and rehabilitation, who treated the plaintiff for his neck and shoulder pain, stated at trial that the injuries to these areas could have been caused by the crash. Additionally, Dr. Randolph B. Malloy, an oral and maxillofacial surgeon who has treated the plaintiff for tempromandibular joint (TMJ) dysfunction, testified that the plaintiff's TMJ problems were most likely caused by the accident. The defendant argues that the plaintiff's TMJ dysfunction is the result of preaccident causes; however, after a thorough review of the evidence, we find that the TMJ problems were a direct result of the accident.
Accordingly, we determine that the plaintiff has proved by a preponderance of the evidence that the defendant is strictly liable for the damage sustained by the plaintiff under LSA-C.C. art. 2317.
As a defense to the imposition of liability under art. 2317, the defendant alleges that the Exxon personnel involved in the rescue operation were negligent in carrying out the rescue operation, that their negligence caused the plaintiff's injuries and that such negligence was an intervening cause, which relieved defendant of liability for the plaintiff's injuries. Third party fault is a judicially recognized defense to strict liability action. Shipp, supra; Jones v. City of Baton Rouge, 388 So.2d 737 (La.1978). Although the plaintiff testified that he injured his jaw during his climb into the rescue craft, there is not sufficient evidence to indicate that the harm which befell the plaintiff resulted from negligence on the part of the rescuers. This defense has no merit.

QUANTUM
Both the plaintiff and defendant appeal the trial judge's damage award. Before we discuss their respective claims, it is necessary to point out that an appellate court can disturb a quantum award only if the record clearly reveals that the trier of fact abused its much discretion in making the award. Bitoun v. Landry, 302 So.2d 278 (La.1974); Alexander v. Leger, 423 So.2d 731 (La.App.3d Cir.1982), writ denied, 430 So.2d 75 (La.1983).
The defendant contends that the trial judge abused his discretion in awarding the plaintiff $40,000.00 in general damages and $15,000.00 in future medical expenses. We have carefully reviewed the evidence pertaining to these awards, and find them not to be an abuse of the trial judge's discretion.
The plaintiff, on the other hand, would have this court increase the trial judge's economic damage award. The trial judge awarded the plaintiff $25,000.00 in economic damages, which figure represents both his past and future lost wages. The plaintiff claims that his lost wages through the date of trial were $66,400.00 and that his loss of future wages would amount to between $150,000.00 and $190,000.00. We agree that there should be an increase in the plaintiff's past lost wage award, but we do not think he is entitled to any damages for loss of earning capacity.
The trial judge was not specific as to what portion of the $25,000.00 economic damage award constituted past lost wages, nor did the trial judge explain what evidence he took into consideration in reaching the amount of the plaintiff's lost wages. The evidence presented in the record establishes that the plaintiff is entitled *688 to a greater amount than $25,000.00 (which the trial court awarded for both past and future lost wages) for past lost wages alone. Therefore, this court finds that the trial judge abused his discretion in making the past lost wage award.
Once a reviewing court makes the finding that the record clearly establishes that the lower court abused its discretion in making an award, it may then modify the award. However, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the lower court could have reasonably awarded, or lowering excessive awards to the highest amount the lower court could have reasonably awarded. It is never appropriate for a reviewing court, having found that the trial court abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Tate v. Trinity Universal Insurance Company, 465 So.2d 235 (La.App.3d Cir.1985).
The plaintiff claims that he is entitled to $66,400.00 in past lost wages. Lost wages need not be proven with precision, reasonable certainty is the standard. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir. 1985). We find that this figure is a true representation of the plaintiff's lost wages, and is, therefore, the lowest amount that the trial judge could have awarded the plaintiff for his past wage claim.
The plaintiff would also have this court increase the trial judge's award for loss of earning capacity. Conversely, the defendant would have us reduce it or eliminate it altogether. As was previously mentioned, the trial judge awarded the lump sum of $25,000.00 for both past and future lost wages. The plaintiff argues that this award constitutes an abuse of the trial court's discretion and seeks to have it increased to between $150,000.00 and $190,000.00. We believe the amount claimed by the plaintiff for future lost wages is not substantiated by the record. Furthermore, we find that the trial court abused its discretion in awarding any amount for future lost wages because the plaintiff has not proved by a preponderance of the evidence that he is entitled to such an award.
A plaintiff who seeks to recover for loss of earning capacity must prove the extent of his injuries resulting from the accident. He also has the burden of proving that the injuries he sustained have incapacitated him from, in the future, doing work of a reasonable character, that is, work for which he was fitted by training and experience, of the same or similar kind in which he was engaged at the time of the accident. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Chaney v. Our Lady of Fatima Catholic Church, 391 So.2d 501 (La.App.3d Cir.1980).
The medical evidence presented by the plaintiff does not clearly establish that the plaintiff cannot perform work of similar character to his former occupation. The plaintiff offered the testimony of several of his treating physicians, and although all of them stated that he has some degree of pain or discomfort, not one of them testified as to whether the plaintiff had any residual disability or whether he would necessarily be restricted in his occupational activities in the future. Dr. Laborde, the physician who treated the plaintiff primarily for his neck and shoulder pain, testified that he did not initially restrict the plaintiff's activities, but that later in his treatment of the plaintiff, he recommended that the plaintiff avoid repetitive bending, stooping or lifting, being in one position for longer than one hour, lifting weight of over twenty-five pounds and exposure to vibrational stresses. Dr. Laborde did not state how long these recommended restrictions were to last, nor did he state whether he believed that the plaintiff had any permanent impairment which would preclude him from performing certain types of jobs.
In view of the lack of evidence as to this item, any award for loss of future income in the instant case would be totally speculative and unsupported by the record. Therefore, we find that the trial court abused its discretion in awarding any future lost wages to the plaintiff.

*689 INTERVENOR'S RECOVERY
The intervenor, USF & G, argues that the trial judge erred in limiting its recovery to the plaintiff's awards for economic damages and medical expenses. Presumably, the trial judge limited the intervenor's recovery under the authority of the Louisiana Supreme Court's decision in Brooks v. Chicola, 514 So.2d 7 (La.1987). The Court in Brooks held that an employer or its worker's compensation carrier is not entitled to recover reimbursement or future credit from the employee's award of general damages in a suit against a third party tortfeasor. The intervenor argues that it has paid compensation benefits pursuant to the Federal Longshore and Harbor Workers' Compensation Act, and not under the Louisiana Worker's Compensation Act, and that the Brooks case is not applicable to the Federal Act. We find it unnecessary to address this issue, as the intervenor should be able to recover its full claim from the plaintiff's augmented past lost wage award and the award for medical expenses. Indeed, since this court increased the plaintiff's past lost wage award, there should be no need for the intervenor to look to the plaintiff's general damage award for its reimbursement. Accordingly, we hold that the intervenor is entitled to recover the full $66,485.38 from the plaintiff's past lost wage award and the award for medical expenses.

INTEREST ON THE INTERVENOR'S RECOVERY
Intervenor points out that the judgment awarding it reimbursement for benefits paid to the plaintiff failed to include a provision for legal interest. Intervenor is entitled to legal interest on the amount paid to the plaintiff. That amount includes interest on all amounts paid as of the date of intervenor's demand, together with interest on any amounts paid after judicial demand, until such time as the judgment becomes final. Breaux v. Roy Young, Inc., 397 So.2d 1384 (La.App.3d Cir.1981); Willis v. Stauffer Chemical Co., 349 So.2d 1390 (La.App.3d Cir.), writ denied, 352 So.2d 1047 (La.1977).

INTEREST ON THE PLAINTIFF'S RECOVERY
The final issue on appeal is raised by the plaintiff and concerns the suspension of judicial interest. A couple of months after the conclusion of the trial on this matter, the defendant sought to terminate the accumulation of legal interest on the amount of the Judgment against it through the filing of a Motion and Order for Deposit of Money Into the Registry of Court and Cancellation of Judgment. The order requested the Clerk of Court of Lafayette Parish to deposit the sum of $130,048.83 into the Registry of the Court. This sum allegedly represented the amount of the Judgment and accrued interest up through the time it was tendered to the plaintiff and intervenor. The trial judge, without contradictory hearing, signed the order on September 26, 1988.
Although there is limited jurisprudence on this issue, two other circuits have allowed such depository procedures. See Gagnet v. Zummo, 487 So.2d 721 (La.App. 5th Cir.1986); LaGraize v. Bickham, 391 So.2d 1185 (La.App. 4th Cir.1980). Both cases held that a defendant, who is cast in judgment, may deposit the full amount of the judgment into the Registry of the Court, together with the accrued costs and interests and be relieved of added costs and interest in the event that the plaintiff appeals. In the LaGraize case, our brethren in the Fourth Circuit stated that for a party to utilize this procedure, the following conditions have to be met:
"There first must be a tender to and refusal to accept by the judgment creditor. The tender and/or the deposit must be for the full amount of the judgment, including costs and interest. It must be unconditional and constitute a complete waiver of any future defense as to liability on the part of the judgment debtor. Acceptance of the tender and/or withdrawal of the funds by the judgment creditor(s) is without prejudice to any of its (their) rights to appeal as to quantum. In the event of an increase in quantum on appeal, the judgment debtor is liable for all additional costs together with legal *690 interest on the amount of the increase from date of judicial demand until paid."
LaGraize, at 1190-1191. Since the defendant's motion would have had to be supported by proof that the LaGraize conditions were met, the trial judge erred in granting the motion ex parte. LSA-C.C.P. art. 963; State v. Williams, 536 So.2d 1312 (La.App. 2d Cir.1989); Conner v. Conner, 481 So.2d 639 (La.App. 1st Cir.1985). Therefore, we remand to the trial court to hold a contradictory hearing on the defendant's motion with instructions to the trial judge to grant the motion only if he finds the LaGraize conditions to be met by the defendant.
For the above and foregoing reasons, the judgment of the trial court is amended and affirmed, increasing the plaintiff's past lost wage award to $66,400.00 and eliminating any award made for future lost wages. The plaintiff's total award is as follows:

General Damages $ 40,000.00
Past Lost Wages $ 66,400.00
Past Medical Expenses $ 18,747.75
Future Medical Expenses $ 15,000.00
 ____________
TOTAL AWARD $140,147.75

We also amend the trial court's judgment to allow the intervenor full recovery of its intervention or $66,485.38. Furthermore, plaintiff and intervenor are entitled to legal interest on their respective awards from date of judicial demand until paid. This case is remanded for reasons stated hereinabove. Costs are to be borne 2/3 by the defendant and 1/3 by the plaintiff.
AFFIRMED AS AMENDED.
REMANDED FOR CONTRADICTORY HEARING ON THE DEFENDANT'S MOTION.